IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TASIA LOCKHART, ROBBIE LOCKHART, and JAMES LOCKHART | |
| Plaintiffs, | HONORABLE JEROME B. SIMANDLE |
| v. | |
| WILLINGBORO HIGH SCHOOL, WILLINGBORO BOARD OF EDUCATION, NYTHON CARTER, COUNTY OF BURLINGTON, MS. CAR, CHRIS and/or JOHN DOE 1 through 50 and XYZ CORPORATION 1 through 30. | Civil No. 14-3701 (JBS/AMD) |
| | **OPINION** |
| Defendants. | |

APPEARANCES:

Bruce H. Zamost, Esq.
PELLETTIERI RABSTEIN & ALTMAN
700 East Gate Drive
Suite 105
Mount Laurel, NJ 08054
    Attorney for Plaintiffs Tasia Lockhart, Robbie Lockhart,
    and James Lockhart

Jeffrey L. Shanaberger, Esq.
HILL WALLACK, LLP
202 Carnegie Center
CN 5226
Princeton, NJ 08543-5226
    Attorney for Defendants Willingboro Board of Education,
    Nython Carter, and Ms. Car

**SIMANDLE**, Chief Judge:

I.   **INTRODUCTION**

    This is an action by Tasia Lockhart ("Tasia") and her legal

guardians, Robbie Lockhart and James Lockhart, seeking to hold

Willingboro High School and other related defendants responsible for a sexual assault against Tasia committed by another student while school was in session.

Presently before the Court is the motion of Defendants Willingboro Board of Education, Nython Carter, and Ms. Car to dismiss the Complaint for failure to state a claim, and Plaintiffs' motion to amend the Complaint. Plaintiffs have agreed to the dismissal of certain claims, and the remaining claims are those under Title IX of the Education Amendments of 1972 and 42 U.S.C. § 1983; negligence claims; and a claim of intentional infliction of emotional distress against Carter and Car.

Because the motion to amend the Complaint raises only new factual grounds for the remaining causes of action and because the Defendant has briefed the insufficiency of the proposed amendments under the Rule 12(b)(6) standard, the Court will incorporate the proposed amendments and address their sufficiency as if included in the initial motion to dismiss. Thus, the motion to amend the Complaint is deemed granted, and the allegations therein are addressed in this opinion.

For the reasons set forth below, the Court will grant Defendants' motion to dismiss with respect to all claims except for Plaintiff Tasia Lockhart's claim under Title IX against

Defendant Willingboro Board of Education (Count Four), and Plaintiffs' claims of negligence (portion of Count One, Count Five, and Count Seven). It is plausible that Plaintiff can prove a cause of action against the Board for deliberate indifference to a pattern of student-on-student sexual assault on the school premises.

## II.  BACKGROUND

### A. Factual Background

The Complaint alleges that on April 12, 2011, Plaintiff Tasia Lockhart, then a 17-year-old student enrolled in a special needs educational program at Defendant Willingboro High School, was sexually assaulted by another student inside an empty classroom at the school while school was in session. (Compl. [Docket Item 1] ¶ 9.) Plaintiff alleges that Defendant "Chris" was her attacker, along with possibly other unidentified John Doe students ("John Doe 1 through 10").

Tasia Lockhart alleges she had previously been sexually assaulted by another student in an empty classroom at the same school two years earlier, on March 20, 2009. (Compl. ¶ 9.) At the time of the sexual assaults, Defendants Nython Carter and "Car" were employed by the school as teachers or administrators. According to the Complaint, the Willingboro Board of Education and its employees, Carter and Car, were in charge of

"supervision, oversight, protection, and/or safety of students during school hours." (Compl. ¶ 6.) A notice of claim pursuant to the New Jersey Tort Claims Act was served upon the Board and Carter on April 17, 2009, providing them notice of the first sexual assault. (Compl. ¶¶ 16-17.)

Plaintiffs' proposed Amended Complaint states that on April 12, 2011, Tasia Lockhart was sexually assaulted after she and another special needs student, Defendant Chris, were permitted to return to a classroom unsupervised to retrieve personal items they had left in the room. Plaintiffs allege that one or more teachers, including Defendant Car, opened the classroom door and discovered Tasia and Chris engaged in sexual activity. (Proposed Am. Compl. [Docket Item 8] ¶ 29.) According to the Amended Complaint, "the classroom door was supposed to have been locked to comply with the school's policy, precisely so that students cannot return to classrooms unsupervised." (Proposed Am. Compl. ¶ 30.)

Plaintiff filed a Notice of Claim in response to the 2011 sexual assault. (Proposed Am. Compl. ¶ 18; Ex. 1 to Pl. Opp. to Mot. to Dismiss [Docket Item 7].)[1] In the notice, Plaintiff

---

[1] Plaintiffs have attached various documents to their opposition brief, and the Court will consider only those documents referred to in Plaintiffs' proposed Amended Complaint. See In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997) (documents integral to or explicitly relied

identified Defendants Nython Carter, the "Willingboro High School assistant principal," and Mrs. Car, a "substitute teacher," as two of the parties responsible for Tasia's injury.

Plaintiffs' Amended Complaint introduces new facts related to Defendants' knowledge of the previous sexual assault. Plaintiffs allege that Defendants were aware of two reports after Plaintiff was assaulted in March 2009. The first, a "Memorandum of Investigation" written by the Willingboro Public Schools Director of Safety, Security and Attendance, Norman Perry, recounts an investigation that was done after the 2009 incident. The Memorandum characterized the 2009 incident as one involving "TL committing fellatio (oral sex) on SM" inside an empty classroom. (Proposed Am. Compl. ¶ 23; May 8, 2009 Mem. of Investigation, Ex. 4 to Pl. Opp. to Mot. to Dismiss [Docket item 7].) The memorandum states that based upon interviews with the students involved, the "incident appeared to be consensual and [] force or threats did not appear to be involved." (See Mem. of Investigation at 1.) The incident was reported to the Burlington County Prosecutor's Office, which agreed with the school's assessment and agreed that no charges were warranted against either student. The prosecutor's office also did not believe that staff could be charged with official misconduct, but

---

upon in the Complaint may be considered by the court).

"thought it was a serious enough incident that should be handled by the school administration." (Id.) The Assistant Superintendent, JoAnn Manning, then directed Perry to conduct an investigation "to determine if there was an attempted cover up." (Id.)

Perry interviewed several staff members at the high school. According to Tasia's teacher, Jessica Kochis, another Willingboro teacher, Sharon Lightsey, found out about the incident a few days later after overhearing students talking about it. She told Kochis about the incident but encouraged Kochis not to tell the administration about what happened. Kochis disregarded Lightsey's suggestion and told the administration anyway. Lightsey denied that this happened. (Id. at 2-3.) Perry's investigation concluded, "Based on the interviews, there is no way to prove that there was an attempt to cover up the incident." (Id.)

Plaintiffs now allege that Defendants were also aware of a psychological evaluation report performed by Dr. Victor J. Nitti, Jr., dated January 26, 2011, approximately two months before Plaintiff was assaulted a second time. (Proposed Am. Compl. ¶ 20; Psychological Evaluation Report, Ex. 2 to Pl. Opp. to Mot. to Dismiss [Docket Item 7].) According to Dr. Nitti's report, Tasia stated that there have been "repeated episodes

where her peers have touched her private body parts or tried to have sex against her wishes." She also stated that she "had a history of taunting by school peers since age 14." (See Psychological Evaluation Report, at 5.) Dr. Nitti concluded that "[t]here is a great likelihood of future abuse against this young woman." (Id. at 7.)

Plaintiffs also attach printouts from the Department of Education purporting to show data from 2009-2010 on incidents of violence and vandalism at certain schools, including Willingboro High School. (Proposed Am. Compl. ¶ 27; Ex. 5 to Pl. Opp. to Mot. to Dismiss [Docket Item 7].) The printouts indicate the "number of individuals who committed an offense of violence, vandalism, weapons or substance abuse reported on the system," as well as the number of victims from these incidents and the type of disciplinary action taken. (Id.)

Plaintiff alleges this previous incident should have placed Defendants on notice that Tasia Lockhart "was at a heightened risk to be sexually victimized." (Compl. ¶ 16.) She alleges that at the time of the second attack, Defendants should have known that "allowing unsupervised young students at its school was unsafe" and failed to implement effective supervision or security measures that were available. (Compl. ¶ 18.)

Plaintiff alleges she suffered "irreparable emotional

7

distress and trauma" as a result of the 2011 attack. (Compl. ¶ 27.) Plaintiffs Robbie Lockhart and James Lockhart are Tasia's grandparents and legal guardians; they claim they suffered "extreme mental anguish and emotional distress and economic loss" from witnessing the emotional impact the attack has had on their granddaughter. (Compl. ¶ 32.)

**B. Procedural History**

Plaintiffs' Complaint was removed to this Court on June 10, 2014. The Complaint asserted claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendment, as well as claims under Title IX; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400. It also alleged violations of the New Jersey Law Against Discrimination ("NJLAD") and the New Jersey Child Sex Abuse Act, N.J.S.A. 2A:61B-1, and claims of negligence and negligent hiring and supervision. Plaintiffs Robbie Lockhart and James Lockart asserted a claim under Portee v. Jaffe, 417 A.2d 521 (N.J. 1980), to recover for emotional distress.[2] Plaintiffs sought

---

[2] The Court exercises subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, and exercises supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

punitive as well as compensatory damages.[3]

Defendants Willingboro Board of Education, Nython Carter, and Ms. Car moved to dismiss the Complaint against them for failure to state a claim upon which relief may be granted. [Docket Item 4.] Plaintiffs opposed the motion to dismiss. However, they consented to the dismissal of their claims under the ADA, IDEA, and Section 504 of the Rehabilitation Act; their Portee claims; and the claims under the New Jersey Law Against Discrimination and the New Jersey Child Sex Abuse Act. They also consented to the dismissal of the claim of intentional infliction of emotional distress against all defendants except for Carter and Car. (Pl. Opp. to Mot. to Dismiss [Docket Item 7], at 6.) Accordingly, the Court will dismiss these claims with prejudice.

Plaintiffs then filed an untimely Amended Complaint [Docket Item 8] without leave of court[4] which contained new allegations

---

[3] The Complaint also seeks recovery from Defendants Chris and John Does 1 through 10 for false imprisonment, assault and battery, and intentional and negligent infliction of emotional distress. These defendants have not entered an appearance on the docket and it is unclear whether they have been identified or served.

[4] As the Court explained in its letter of September 17, 2014, Plaintiffs' Amended Complaint required leave of Court because it was not filed within 21 days after service of Defendants' dismissal motion. Plaintiffs' formal motion to amend ensued thereafter, together with Defendants' opposition. Plaintiffs filed an opposition to Defendants' dismissal motion before filing their motion to amend. But because Defendants have also

of a "cover-up" of the 2009 sexual assault and later filed a motion seeking leave to amend. [Docket Item 13.][5] The Amended Complaint asserts claims against Defendants for failure to train under § 1983 (Count Three); claims under Title IX (Count Four); and common law claims of intentional infliction of emotional distress, negligence, negligent hiring, loss of consortium and companionship, and negligent infliction of emotional distress (Counts One, Two, Five, Six, Seven).

Defendants oppose Plaintiff's motion to amend on the grounds of futility, addressing the legal sufficiency of the proposed amended claims under the Rule 12(b)(6) standard applicable to their original motion to dismiss. [Docket Item 14.][6]

## III. STANDARD OF REVIEW

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded

---

addressed the sufficiency of the proposed Amended Complaint, and for the sake of fairness and efficiency, the Court will deem the allegations of the proposed Amended Complaint to be set forth in the Complaint under examination in this motion.

[5] Although Plaintiffs styled their motion to amend as a motion "Seeking Leave to File a Second Amended Complaint," there is no Second Amended Complaint on the docket and it is clear from Plaintiffs' brief that they seek leave to amend their original Complaint with the Amended Complaint submitted in August.

[6] The parties stipulated to the dismissal of Defendant Township of Willingboro on December 3, 2014. [Docket Item 16.]

allegations in the complaint as true and view them in the light most favorable to the nonmoving party. A motion to dismiss may be granted only if a court concludes that the plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests that make such a claim plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Although Rule 8 does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

Although the court must accept as true all well-pleaded factual allegations, it may disregard any legal conclusions in the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). A plaintiff should plead sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element," Twombly, 550 U.S. at 556, and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Iqbal, 556 U.S. at 678.

Whether a proposed amendment to the complaint should be permitted at this early stage, when leave to amend should be freely granted under Rule 15(a)(2), is generally measured by whether the proposed amendment would be futile. Adams v. Gould,

Inc., 739 F.2d 858, 864 (3d Cir. 1984). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 (3d Cir. 2010); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). In assessing "futility," the court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Shane, 213 F.3d at 115. Thus, if a claim is vulnerable to dismissal under Rule 12(b)(6) and the Court finds that an amendment would not cure the deficiency, the request to amend will be denied.

## IV.   ANALYSIS

### A. Defendants' motion to dismiss

Remaining before the Court are Plaintiffs' claims under Title IX and 42 U.S.C. § 1983; negligence claims; and claim of intentional infliction of emotional distress against Carter and Car.

#### a. Plaintiff's § 1983 claims must be dismissed for failure to state a claim (Count Three)

Count Three of Plaintiff's Complaint asserts claims under 42 U.S.C. § 1983 for deprivation of Plaintiffs' First and Fourteenth Amendment rights.

42 U.S.C. § 1983 provides a civil remedy against any person who, acting under color of state law, deprives another of rights protected by the U.S. Constitution. To establish § 1983 claim, a

12

plaintiff must demonstrate that her constitutional rights were violated and that the deprivation was committed by a person acting under color of state law. See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)); see also West v. Atkins, 487 U.S. 42, 48 (1988). To obtain a judgment against a municipality, a plaintiff must first establish that the municipality itself supported the violation of the rights alleged. See Monell v. Dep. of Soc. Servs., 436 U.S. 658, 692-95 (1978); Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). In other words, the plaintiff must show that the municipality through one of its policymakers promulgated an unconstitutional policy, or acquiesced in a widespread unlawful custom that caused the constitutional violation. Watson v. Abington Twp., 478 F.3d 144, 155-156 (3d Cir. 2007); Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). The plaintiff must also show that the municipal practice was the proximate cause of the injuries suffered. Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

The Court will first address Plaintiffs' claim under the First Amendment. The First Amendment protects an individual's right to freedom of expression and association against governmental intrusion. Within a school, a student has a First

Amendment right to express her opinions "if [she] does so
without materially and substantially interfering with the
requirements of appropriate discipline in the operation of the
school and without colliding with the rights of others." Tinker
v. Des Moines Indep. Comm. Sch. Dist., 393 U.S. 503, 513 (1969)
(internal quotations and citation omitted). To state a plausible
violation under the First Amendment, an individual must first
demonstrate that she engaged in speech or conduct that is
protected by the First Amendment. Nothing in Plaintiffs'
Complaint suggests that Tasia Lockhart or her legal guardians
engaged in such activity, nor are there any allegations that
Defendants interfered with any First Amendment rights. The Court
will therefore dismiss Plaintiff's § 1983 First Amendment claim.[7]

Plaintiffs also assert claims under the Fourteenth
Amendment's Due Process Clause, alleging that Defendants
violated Tasia's due process rights by failing to train and/or
properly supervise its students and staff in sexual harassment
and failing to have and enforce a policy to prevent student-on-
student sexual harassment. (Compl. ¶ 36.) The Complaint falls
short of stating a plausible claim for several reasons.

First, the Complaint contains insufficient facts to

---

[7] Plaintiffs' opposition to Defendants' motion to dismiss does
not address a violation under the First Amendment.

establish that Defendants Willingboro High School, Carter, or Car violated Tasia Lockhart's constitutional rights. The Due Process Clause does not protect Tasia Lockhart from being sexually assaulted by another student at school. Substantive due process protects an individual's liberty interest in bodily integrity but in general does not impose a duty on the state to protect individuals from harm inflicted by private actors. See DeShaney v. Winnebago Cnty. Dep't of Social Servs., 489 U.S. 189, 196-197 (1989). Although there are two exceptions to this general rule, neither applies here.

The first exception is commonly known as the "special relationship" exception, which allows a plaintiff to recover when the state enters into a special relationship with a citizen and "fails to protect the health and safety of the citizen to whom it owes an affirmative duty." D.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1369 (3d Cir. 1992). In general, the Court of Appeals has held that the authority that schools have over students during the school day does not create the "special relationship" necessary for a student to assert a viable due process claim under § 1983. See Morrow v. Balaski, 719 F.3d 160, 170 (3d Cir. 2013); Middle Bucks, 972 F.2d at 1371-72. Requiring students to attend class and authorizing school officials to engage in disciplinary control

does not sufficiently restrict a student's liberty to create the type of physical custody necessary to bring it within the "special relationship" exception. Middle Bucks, 972 F.2d at 1372. Nothing in Plaintiffs' Complaint or proposed Amended Complaint suggests that as a student in the special needs educational program, Tasia's liberty at school was so restricted that she fell within "certain unique and narrow circumstances" allowing the exception to apply. See Morrow, 719 F.3d at 171 (finding no special relationship even though school attendance was compulsory and school was aware of a student's criminal conduct, threats, and no-contact orders against another student); Fialkowski v. Greenwich Home for Children, Inc., 921 F.2d 459, 465-66 (3d Cir. 1990) (intellectually disabled adult's liberty was not restrained by state because he enjoyed freedom of movement and parents were free to remove their son from the institution if they wished). Tasia's participation in the high school environment was not an institution setting like a prison or institutional confinement setting where the state may have heightened duties to protect those whom it exposes to danger and who are unable to protect themselves from fellow inmates. Plaintiffs' allegations are insufficient to show that Defendants entered into a "special relationship" with Tasia Lockhart merely by virtue of her being a high school student.

Under the "state-created danger" exception, the state has
an affirmative duty to protect "if the state's own actions
create the very danger that causes the plaintiff's injury,"
Morrow, 719 F.3d at 166-67. In order to hold a state actor
liable, the plaintiff must show: (1) the harm caused was
foreseeable and fairly direct; (2) the state acted in willful
disregard or deliberate indifference for the safety of the
plaintiff; (3) there existed some relationship between the state
and the plaintiff; and (4) the state used its authority to
create an opportunity that otherwise would not have existed for
the third party's crime to occur. Morse v. Lower Merion Sch.
Dist., 132 F.3d 902, 907 (3d Cir. 1997); Kneipp, 95 F.3d at
1208. Plaintiffs argue that Defendants should have known that
Tasia was at high risk for being sexually victimized because she
had been sexually assaulted two years prior. They argue that
Defendants created the circumstances that led to her sexual
assault because they allowed her to enter a classroom
unsupervised. But providing a high school setting in which an
assault occurs without specific warning does not amount to the
school Defendants creating the opportunity for criminal conduct
victimizing Plaintiff that could not otherwise have occurred.
More specifically, the Complaint and Amended Complaint do not
allege that the assailant "Chris" was known to present a danger

17

of assault to Tasia nor that the Defendants somehow fostered or
promoted the assault to occur.

In short, no reasonable inference may be drawn that
Defendants were aware of a high likelihood that allowing Tasia
momentarily to enter a classroom unsupervised to retrieve her
belongings would have led to her being sexually assaulted. See
Middle Bucks, 972 F.2d 1364 (holding that "state-created danger"
exception did not apply to student who was repeatedly sexually
assaulted by several male students in rooms connected to a
classroom, because teacher in charge of classroom could not have
foreseen risk of sexual assault from her lack of close
supervision); Morse, 132 F.3d at 910 (school district could not
have foreseen harm when school left a back door unlocked which
allowed a mentally ill woman to enter and kill a teacher);
Brooks v. City of Philadelphia, 747 F. Supp. 2d 477, 485 (E.D.
Pa. 2010) (single incident of inappropriate student-on-student
touching two days prior was insufficient to show that the second
incident of inappropriate touching was foreseeable). If
anything, the facts posited by Plaintiff shows negligence or
inattentiveness to a need for greater supervision, not the
creation of a dangerous environment by the school Defendants.
Claims of negligence do not rise to the level of constitutional
protection under § 1983, even when unfortunate harm occurs. Bd.

18

of Cnty. of Com'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407
(1997) (a showing of "simple or even heightened negligence" is
insufficient to show deliberate indifference); Berg v. Cnty. of
Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Because the facts
are insufficient to show that this case falls within the state-
created danger exception, the Complaint fails to plead that
Tasia's constitutional rights have been violated.

In the absence of a constitutional violation, Defendants
cannot be held liable under § 1983 for failure to train or
supervise. Middle Bucks, 972 F.2d at 1376 (holding that without
a showing of a special duty to plaintiff, defendants could not
be held liable under § 1983 for having a custom or policy that
led to plaintiff's sexual assault by other students).

Even assuming that Tasia's substantive due process rights
were violated, the allegations are insufficient to make out a
claim of failure to train or supervise under § 1983. "[A]
municipality's failure to properly train its employees and
officers can create an actionable violation of a party's
constitutional rights under § 1983." Reitz v. County of Bucks,
125 F.3d 139, 145 (3d Cir. 1997) (citing City of Canton v.
Harris, 489 U.S. 378, 388 (1989)). To state a claim, Plaintiffs
must show that Defendants' failure to train or supervise
employees amounted to "'deliberate indifference' to the rights

of persons with whom those employees will come into contact.'" Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir. 1999) (quoting Canton, 489 U.S. at 388). Additionally, Plaintiffs must show a causal link: "[T]he identified deficiency in [the entity's] training program must be closely related to the ultimate injury." Canton, 489 U.S. at 391; see also Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014).

Plaintiffs have failed to set forth sufficient allegations to establish a § 1983 claim for failure to train of constitutionally-mandated obligations, first, because the facts do not gives rise to a plausible inference that Defendants failed to provide adequate training or supervision over its employees. Plaintiffs state that the "factual basis" for their claim is "the fact that the sexual activity occurred both while the school program was in session in the school building." Plaintiffs then go on to state that this fact shows that "the policy, procedure, training and supervision to prevent student on student sexual contact was either inadequate or not enforced or not in place." (Compl. ¶ 37.) But the mere allegation that two sexual assaults occurred at the school is not enough to show that Defendants had an inadequate training program. In a § 1983 failure to train claim, "the focus must be on the adequacy of the training program in relation to the tasks the particular

20

officers must perform." Canton, 489 U.S. at 390. But nowhere in the Complaint or Amended Complaint do Plaintiffs even mention what policies or practices Defendants had with respect to teacher training, sexual assault training and prevention, and supervision. Without any facts showing what specific training or supervision was in place or what should have been provided, Plaintiffs cannot support a claim that the training provided was inadequate. See Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (noting that in a § 1983 failure to train claim, plaintiff "must identify a failure to provide specific training").

As the Court has already explained, a § 1983 claim for failure to train requires some allegations from which the court can infer that the defendant failed to offer some specific training that would have prevented the deprivation of plaintiff's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 390 (1989); Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (noting that plaintiff "must identify a failure to provide specific training"). Plaintiff's Amended Complaint also fails to point to any specific policy or program that should have been in place but was not. See Diaz v. City of Hackensack, 2010 WL 1459582, at *1 (D.N.J. 2010) (dismissing failure to train claim because the plaintiff's Complaint

21

"neither identifies the specific training that was absent, or demonstrates the absence of such specific training amounted to deliberate indifference.").

The Court finds no new allegations in Plaintiff's Amended Complaint which would support a claim that Defendants failed to provide proper sexual harassment training programs or failed to supervise. Plaintiffs allege that Defendants allowed Tasia Lockhart to be left alone in a classroom unsupervised with another student; they seemingly wish the Court to draw from these facts an inference that there was a broader policy of failing to supervise students while at the school. But in fact, Plaintiffs specifically alleged in their Amended Complaint that locking classroom doors was the "school policy," and that it was instituted "precisely so that students cannot return to classrooms unsupervised." Thus, the lack of supervision in the classroom in Tasia's case does not appear to be reflective of the school's policy for supervision of its students. Nor has Plaintiff pointed to numerous recurring incidents stemming from a lack of teacher supervision to suggest that the school had a custom or practice that was so pervasive and well-settled that it assumed the force of law. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Second, even assuming that there was a failure to train or

supervise, Plaintiffs have not shown that Defendants' failure amounted to deliberate indifference. Ordinarily, deliberate indifference for purposes of failure to train is demonstrated by a "pattern of similar constitutional violations by untrained employees." Connick v. Thompson, 131 S.Ct. 1350, 1360 (2011). In certain situations, however, the need for training may be "'so obvious' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights," even without a pattern of constitutional violations. Canton, 489 U.S. at 390 n.10; Connick, 131 S. Ct. at 1361 (noting that a single incident may trigger municipal liability where unconstitutional consequences for failure to train are "patently obvious"). In other words, Plaintiffs must show that Defendants were "on notice that, absent additional specified training, it was 'highly predictable'" that employees would make decisions that would violate constitutional rights. Connick, 131 S. Ct. at 1365. Plaintiff has not stated a claim under either a pattern-of-violation theory or a single-violation theory.

With respect to the pattern-of-violation theory, Plaintiffs argue that the similarity between the two sexual assaults, in that they both occurred in empty classrooms inside the school, shows that there was a practice of misconduct which Defendants ignored. (Pl. Br. [Docket Item 7], at 27.) The Court disagrees.

23

For purposes of assessing the state-created danger liability under the Fourteenth Amendment's substantive due process clause, a single instance of misconduct by a different student two years prior, as unfortunate as that is, does not establish a pattern of behavior sufficient to put the school board on notice of potential harm to Tasia. See Palmer v. Marion Cnty., 327 F.3d 588, 596 (7th Cir. 2003) (holding that supervisor's knowledge of two incidents of misconduct by correctional officers in a period of one year did not meet the test of a widespread unconstitutional practice); Cornfield by Lewis v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1327 (7th Cir. 1993) (in a failure-to-train action, two reported incidents of strip searching at high school "fall short of a pattern of violations sufficient to put the school board on notice of potential harm to students"); Mariani v. City of Pittsburgh, 624 F.Supp. 506, 511 (W.D. Pa. 1986) ("Isolated events will not establish a pattern of abusive behavior.").

Nor do the allegations show that in the absence of a pattern of misconduct, the failure to supervise or train on a sexual harassment policy created such obvious risks of harm that it rose to the level of deliberate indifference for purposes of Section 1983 liability. Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious

24

consequence of his action." Bd. of Cnty. Comm'rs v. Brown, 520
U.S. 397, 410 (1997). In order to hold Defendants liable for
such indifference to the prospect of a Fourteenth Amendment
violation, Plaintiffs must show that sexual assault was the
"plainly obvious consequence" of the District's failure. Brown,
520 U.S. at 411. Since the criminality of sexual assault should
have been clear to students and teachers, the failure to provide
training on criminal sexual contact could not have created an
obvious risk that it would occur at the school. See Kline ex
rel. Arndt v. Mansfield, 255 Fed. App'x 624, 630 (3d Cir. 2007)
(holding that failure of school to train its employees to spot
signs of sexual abuse was not deliberately indifference "because
not committing the crime of sexually abusing a child is
obvious") (following Walker v. City of New York, 974 F.2d 293,
299-300 (2d Cir. 1992)); Douglas v. Brookville Area Sch. Dist.,
836 F. Supp. 2d 329, 361 (W.D. Pa. 20111) (noting that "[t]he
content of a municipal defendant's training program is of little
relevance in a case involving a . . . willful violation of known
legal restrictions."). Nor is it plainly obvious that
Defendants' failure to supervise its employees would lead to
increased sexual assault.

The events in this case are tragic, but the Court cannot
conclude that Tasia was the victim of Defendants' action of

which sexual assault was the known and obvious consequence. The Court will dismiss Plaintiffs' First and Fourteenth Amendment claims under § 1983. Since the proposed Amended Complaint has been considered and also fails to state a section 1983 claim, it appears that further amendment would be futile. To the extent Plaintiff asserts a parallel substantive due process claim under N.J.S.A. § 10:6-2(a), that claim will be dismissed for the same reasons.

> **b. Plaintiff has stated a claim for relief under Title IX (Count Four) against Defendant Willingboro Board of Education only; the Title IX claims of Robbie and James Lockhart will be dismissed for lack of standing.**

Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, prohibits a funding recipient from discriminating on the basis of sex. Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance . . . ." 20 U.S.C. § 1681(a).[8]

Although Title IX is applicable to institutions and

_____

[8] Title IX provides a plaintiff with a private right of action and has no administrative exhaustion requirement and no notice provisions. <u>Fitzgerald v. Barnstable Sch. Comm.</u>, 555 U.S. 246, 255 (2009).

programs that receive federal funds, it "does not authorize suits against school officials, teachers, and other individuals." Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009); Williams v. Bd. of Regeants, 477 F.3d 1282, 1300 (11th Cir. 2007) ("Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations."). Plaintiffs' Title IX claim therefore does not reach Nython Carter or Ms. Car. Moreover, as Robbie and James Lockhart have no standing to assert personal claims under Title IX, this may only go forward with respect to Plaintiff Tasia Lockhart. D.V. v. Pennsauken Sch. Dist., 2013 WL 4039022, at *9 (D.N.J. Aug. 7, 2013); Dipippa v. Union Sch. Dist., 819 F. Supp. 2d 435, 446 (W.D. Pa. 2011).

Under Title IX, a school board may be held liable for being deliberately indifferent to student-on-student sexual harassment. Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 643 (1999). To prevail on such a claim, Plaintiffs must show (1) that the school board exercised substantial control over both the harasser and the context in which the harassment occurred; (2) the school board had "actual knowledge" of the harassment; (3) the school board was "deliberately indifferent" to the harassment; and (4) the harassment was "so severe, pervasive, and objectively offensive that it [could] be said to [have]

deprive[d] the victims of access to the educational opportunities or benefits provided by the school." Id. at 645, 650.

There is no dispute that the Complaint sufficiently alleges that the circumstances giving rise to the sexual assault were within the control of the school board, as the incident occurred on school grounds and while school was in session. The Court must determine whether Plaintiff has supplied grounds for her Title IX allegations that she was subject to "pervasive" sexual harassment; that Defendants knew of the ongoing harassment; or that Defendants were deliberately indifferent to the harassment.

As the Court has already noted, Tasia's assailant in the second incident, "Chris," appears to be a different student, which suggests that the first assault two years earlier might seem unrelated. However, in Plaintiff's proposed Amended Complaint, she alleges that she was the victim of sexual harassment by other students on school premises that Defendants knew about and were indifferent toward. Not only were Defendants allegedly aware of the alleged March 2009 assault, according to Plaintiffs, which the Willingboro Public Schools Director Norman Perry wrongly deemed consensual, but the Board had also been furnished with the psychological evaluation report of Dr. Victor J. Nitti, Jr., dated January 26, 2011, just two months before

28

Tasia was assaulted in March 2011. (Proposed Am. Compl. ¶ 20; Psychological Evaluation Report, Ex. 2 to Pl. Opp. to Mot. to Dismiss [Docket Item 7].) Dr. Nitti identified a pattern of taunting and unwanted sexual touching by other students and attempts to force her to have sex against her wishes, dating back to age 14. Dr. Nitti evaluated Plaintiff as especially vulnerable to sexual assault and he predicted that "[t]here is a great likelihood of future abuse against this young woman." (Id. at 7.) The present pleadings suggest that the Board disregarded Dr. Nitti's explicit warning and took no measures to protect Tasia.

The proposed Amended Complaint further alleges in paragraph 27 that there was an unusually high incidence of violence toward students with disabilities in the high school's classrooms in 2009-10, prior to the April 12, 2011 sexual assault. Defendants knew of this special dangerousness toward disabled students because the data came from Willingboro High School's own database of the violence and vandalism reporting system. (Am. Compl. ¶ 27.) Tasia's disability included her special needs classification, denominated as Communication Impaired with academic placement due to multiple learning disabilities and communication impairment. (Id. ¶ 21.) At age 15 in 2009, her reading skills were the equivalent of 9.6 years and her math

reasoning skills were at age equivalent of 7.9 years. (Id.) Her medical diagnosis includes "organic brain syndrome secondary to Fetal Alcohol Syndrome." (Id.) Plaintiffs allege that all this was known to Defendants prior to the March 2011 sexual assault.

Thus, the proposed Amended Complaint alleges that Tasia, as a vulnerable student with learning disabilities, was subject to pervasive sexual harassment by other students, of which Defendants were made aware, and that thus Defendants were indifferent to the harassment and to the danger that it would escalate. These allegations are presented with sufficient factual grounds that are not mere conclusions or generalities. It is therefore plausible that Plaintiff can prove her Title IX claim against the School Board, because such deliberate indifference to the safety of a vulnerable young woman who needs to be protected against sexual assault is indeed actionable under Title IX. Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 643 (1999).

In summary, the Title IX claims of Robbie and James Lockhart are dismissed for lack of standing, and Tasia Lockhart's claim against Nython Carter and Ms. Car must be dismissed because Title IX does not authorize suits against teachers and school officials. The proposed Amended Complaint states a claim on behalf of Tasia Lockhart against Willingboro

Board of Education. Plaintiff surely has a high burden at trial of proving deliberate indifference. Under Title IX, school administrators "are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 638. But at this pleading stage, the Court cannot say that there is no plausible basis for Plaintiff to prevail on such a claim under Title IX. Plaintiff Tasia Lockhart may thus proceed upon her claim under Title IX in Count Four of the proposed Amended Complaint.

### c. Plaintiffs' negligence claims and claim for *per quod* damages in Counts One, Five and Seven may proceed, except Plaintiffs' negligent hiring claim in Count One must be dismissed.

In addition to their federal claims, Plaintiffs bring state law claims of negligence and negligent supervision in Counts One, Five, and Seven. Specifically, they allege that Defendants should have known that Tasia was at risk to be sexually victimized and were negligent in not providing supervision or security measures to prevent the attack in an empty classroom. Count One also includes a claim of negligent hiring, and Count Five includes a claim for *per quod* damages.

The Court will first address the negligence claims. In order to prevail on a negligence cause of action in New Jersey, plaintiff must prove: (1) that defendants owed the plaintiff a

31

duty of care; (2) that defendants breached their duty; and (3)
that defendants' breach proximately caused the plaintiff's
injuries. See Robinson v. Vivirito, 86 A.3d 119, 124 (N.J. 2014)
(stating the elements of a cause of action for negligence).
"[F]oreseeable risk is the indispensable cornerstone of any
formulation of a duty of care." Dunphy v. Gregor, 642 A.2d 372,
376 (N.J. 1994).

As explained above with regard to Title IX, Plaintiff Tasia
Lockhart has pleaded that the sexual assault against Tasia was a
foreseeable harm, and the basis for such foreseeability. It was
foreseeable that leaving a classroom space unsupervised would
have created a substantial risk of student-on-student sexual
assault against her, due to the pattern of sexual assaults or
sexual harassment directed at her by other students at the
school over the two years prior to the 2011 assault, as alleged
in the proposed Amended Complaint. It is plausible that
Plaintiff can prove that Defendants breached their duty of care
to her as a student with intellectual impairments who, according
to Dr. Nitti's opinion, was especially vulnerable to sexual
assault. That the Defendants owed a heightened duty to protect a
vulnerable teenaged girl with learning and communication
disabilities is also plain. The motion to dismiss Counts One,
Five, and Seven will be denied.

To the extent Plaintiffs Robbie and James Lockhart seek *per quod* damages for Tasia Lockhart's injuries in Count Five, that claim may proceed. Under New Jersey law, parental loss of services of a minor child resulting from defendant's negligence is a viable *per quod* claim. See J.V. ex rel. Valdez v. Macy's Inc., 2014 WL 4896423, at *4 (D.N.J. Sept. 30, 2014). However, the common law limits parents' *per quod* damages to loss of services, earnings, and medical expenditures resulting from injuries to a minor child. Parents are not entitled to recover for the loss of consortium of a minor child resulting from a defendant's negligence. See J.V., 2014 WL 4896423, at *4 (dismissing plaintiff's claim for parental loss of consortium but permitting claim for parental loss of services); Gould ex rel. Gould v. TJX Co., 2013 WL 1288167, at *5 (D.N.J. Mar. 26, 2013); McDonald v. Lederle Laboratories, 841 A.2d 948, 952 (N.J. Super. Ct. App. Div. 2004) ("[W]e decline to extend [plaintiff's] common law *per quod* damages "beyond those for loss of services, earnings, and medical expenditures"); Tynan v. Curzi, 753 A.2d 187, 187 (N.J. Super. Ct. App. Div. 2000) (refusing to allow parents recovery for loss of companionship and society in negligence actions). Thus, Plaintiffs' *per quod* claim will be permitted to proceed, except that damages will be limited to loss of services, earnings, and medical expenditures.

33

Plaintiffs' claim of negligent hiring, asserted in part of Count One, must be dismissed.  Plaintiffs allege no facts to support a claim that any Defendant was unfit to be hired, or that Defendants were aware of the employee's unfitness. <u>See Brijall v. Harrah's Atlantic City</u>, 905 F. Supp. 2d 617, 620 (D.N.J. 2012) (reciting elements of negligent hiring). The remainder of Count One may proceed, as discussed above.

### d. Plaintiffs' claim of intentional infliction of emotional distress in Count Six must be dismissed.

A claim of intentional infliction of emotional distress requires the plaintiff to plead "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." <u>Taylor v. Metzger</u>, 706 A.2d 685, 694 (N.J. 1998).

Plaintiffs consent to the dismissal of their claim of intentional infliction of emotional distress against Willingboro Board of Education and oppose the dismissal of the claim against Carter and Car.

Nonetheless, the Court must dismiss this claim against Carter and Car. Nothing in the Amended Complaint infers that the conduct of this substitute teacher and assistant principal was outrageous. There is no allegation that these Defendants were aware of Chris's intentions or proclivities to commit a sexual assault, nor that these Defendants in any way promoted this encounter. At most, in leaving a classroom door unlocked when

34

the room was empty and permitting Tasia and the assailant Chris to enter to gather their possessions is not intentional and outrageous. As there are no facts from which this Court may infer that Carter or Car engaged in "intentional and outrageous conduct" which proximately caused Plaintiffs' severe distress, the Court will dismiss Count Six without prejudice.

> ### e. Plaintiffs' claim for punitive damages must be dismissed.

The claim for punitive damages in the prayers for relief contained in Counts Three to Seven will be dismissed, as the allegations do not support a claim for punitive damages. Punitive damages are unavailable against Willingboro Board of Education, which is public entity. See N.J.S.A. 59:9-2(c). With respect to Carter and Car, who are employees of the school, punitive damages are available only if Plaintiffs can establish that the employee's conduct "constituted a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:3-14. Since the proposed Amended Complaint fails to identify any egregious role that Carter or Car played in the incident, no reading of the facts would support a claim that Carter or Car engaged in willful misconduct, committed a crime, or acted with actual malice. Mere labels of such misconduct, unsupported by factual grounds, are insufficient. Iqbal, 556 U.S. at 678.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiffs'
motion to amend the Complaint. With respect to Defendants'
motion to dismiss, the Court will grant the motion and dismiss
the claims under Section 1983 for violation of First and
Fourteenth Amendment rights (Count Three of the Complaint),
grant the motion and dismiss Robbie and James Lockhart's claim
of emotional distress under Portee v. Jaffe, 417 A.2d 521 (N.J.
1980) (Count Two); grant the motion and dismiss the claim of
negligent hiring (portion of Count One); grant the motion and
dismiss the claims of intentional infliction of emotional
distress (Count Six); and grant the motion and dismiss any
claims for punitive damages.

The Court will grant the motion with respect to claims
under Title IX as to all Defendants, except that Plaintiff Tasia
Lockhart's claim under Title IX against Defendant Willingboro
Board of Education may proceed (Count Four). The Court will deny
the motion with respect to Plaintiffs' claims of negligence
(portion of Count One, Count Five, and Count Seven). Plaintiffs'
claim for *per quod* damages in Count Five shall be limited to
loss of services, earnings, and medical expenditures.
Plaintiffs' claims for punitive damages shall be dismissed.

Finally, counsel for Plaintiffs shall prepare and file a
Second Amended Complaint consistent with this Opinion and

setting forth the claims which survive this dismissal motion, within fourteen (14) days, to which Defendants shall file their Answers within fourteen (14) days thereafter.

**March 31, 2015**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
Chief U.S. District Judge