IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TASIA LOCKHART, ROBBIE LOCKHART, and JAMES LOCKHART<br><br>        Plaintiffs,<br><br>   v.<br><br>WILLINGBORO HIGH SCHOOL, WILLINGBORO BOARD OF EDUCATION, NYTHON CARTER, COUNTY OF BURLINGTON, MS. CAR, CHRIS and/or JOHN DOE 1 through 50 and XYZ CORPORATION 1 through 30.<br><br>        Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil No. 14-3701 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

Bruce H. Zamost, Esq.
PELLETTIERI RABSTEIN & ALTMAN
700 East Gate Drive
Suite 105
Mount Laurel, NJ 08054
    Attorney for Plaintiffs Tasia Lockhart, Robbie Lockhart, and
    James Lockhart

Jeffrey L. Shanaberger, Esq.
HILL WALLACK, LLP
202 Carnegie Center
CN 5226
Princeton, NJ 08543-5226
    Attorney for Defendants Willingboro Board of Education,
    Nython Carter, and Ms. Car

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This is an action by Tasia Lockhart ("Tasia") and her legal

guardians, Robbie Lockhart and James Lockhart, seeking to hold

Willingboro High School and other related defendants responsible

for a sexual assault against Tasia committed by another student while school was in session.

Presently before the Court is the motion of Defendants Willingboro Board of Education, Nython Carter, and Ms. Kaur[1] for summary judgment on Plaintiffs' remaining claims, which consist of Plaintiffs' common law negligence claims (Counts One and Four), including the *per quod* damages claims of Plaintiffs Robbie and James Lockhart (Count Three), and a claim of under Title IX, 42 U.S.C. § 1983 (Count Two). Moreover, the parties have agreed to dismiss all claims against Defendant Nython Carter.

For the reasons set forth below, Defendants' motion for summary judgment will be granted in part and denied in part. With respect to Plaintiffs' state law claims under the New Jersey Tort Claims Act (Counts One and Four) and Plaintiffs' Robbie and James Lockhart's *per quod* damages claim (Count Three), summary judgment will be granted. However, with respect to Plaintiff Tasia Lockhart's claim under Title IX against Defendant Willingboro Board of Education (Count Two) summary judgment is denied.

---

[1] Although previously identified as "Ms. Car," it has since been learned that the correct spelling of the Defendant's name is "Ms. Kaur."

## II. BACKGROUND

### A. Factual Background[2]

Plaintiff Tasia Lockhart, 23 years old, attended Willingboro High School for ninth through the twelfth grade (September 2008 through June 2012), and graduated in June 2012. (Def. Statement of Material Facts at ¶ 1.) Plaintiffs Robbie Lockhart and James Lockhart are Tasia's grandparents and were her guardians since she was a minor. (Id. at ¶ 2.) For the ninth grade year, the 2008-2009 academic year, Tasia was placed in a self-contained classroom in the school's Workforce Readiness Program. (Id. at ¶ 3.)

On Friday, March 20, 2009, while in an empty and unsupervised classroom, Tasia's friend, Shawn Midgette (Midgette) (age 17), suggested that Tasia perform oral sex on him, and she complied with this request. (Pl. Br. at 4.) A teacher, Jessica Kochis (Kochis), learned of the incident on March 25, 2009, and she reported it to the Assistant Principal, Nython Carter, who in turn

---

[2] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), contain improper legal argument or conclusions, or recite factual irrelevancies. See generally L. CIV. R. 56.1(a); see also Kemly v. Werner Co., 151 F. Supp. 3d. 496, 499 n. 2 (D.N.J. 2015) (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Steamship Co., Ltd., 148 F. Supp. 3d 374, 379 n. 9 (D.N.J. 2015) (same).

reported it to the Principal, Teresea Lucas, who then reported it to Patrolman Walter Harvey of the Willingboro Police Department. (Def. Br., Ex. E and F.) Patrolman Harvey prepared a report which stated, inter alia, that "[b]ased upon what Tasia reports, this incident appears to be consensual and force or threats does not appear to be involved." (Def. Br., Ex. E.) The report also indicated that Patrolman Harvey had contacted Assistant Prosecutor Doug Bligh of the Burlington County Prosecutor's Office with regard to the incident between the two students and a possible attempt to cover it up by staff members of the high school. (Id.)

On March 31, 2009, in response to an email from Assistant Superintendent JoAnn Manning requesting an update on the investigation, Principal Lucas sent an email to Manning, stating that "all appropriate agencies, DYFS, the Prosecutor, Mr. Perry, Mr. Sullivan and WHS-SRO were notified of the incident as required." (Def. Br., Ex. G.) The email further stated that "Mr. Carter met with the guardian of Tasia Lockhart" and that both students were suspended in accordance to the Board's discipline policy. (Id.) The last paragraph of the email reads as follows:

> Mr. Carter and I both met with each of the staff
> members that are assigned to classroom 302, along
> with their WEA Representative. It was apparent that
> certain members of the staff failed to report the
> incident in a timely fashion. I spoke with Mr.
> Sullivan regarding the outcome of each meeting. He
> is going to ask Carol Marcellus to meet with Mr.
> Carter and myself regarding the reassignment of
> staff for that program and any recommendations for
> disciplinary actions.

4

(Id.) Assistant Superintendent Manning, then directed Norman Perry (Perry), Director of Safety, to conduct an investigation "to determine if there was an attempted cover up." (Def. Br., Ex. F.) Perry interviewed several staff members at the high school. According to Tasia's teacher, Jessica Kochis, another Willingboro teacher, Sharon Lightsey, found out about the incident a few days later after overhearing students talking about it. She told Kochis about the incident but encouraged Kochis not to tell the administration about what happened. (Id.) Kochis disregarded Lightsey's suggestion and told the administration anyway. Lightsey denied that this happened. (Id. at 2-3.) Ultimately, Perry's investigation concluded that "[b]ased on the interviews, there [was] no way to prove that there was an attempt to cover up the incident." (Id.)

A notice of claim pursuant to the New Jersey Tort Claims Act was served upon the Board and Carter on April 17, 2009, providing Defendants notice that Plaintiffs were alleging that the March 20, 2009 incident was an act of sexual assault against Tasia Lockhart. (Pl. Br., Ex. 1.) In connection with that law suit, at the request of her attorney, Tasia appeared for psychological evaluations with Dr. Victor J. Nitti, who issued a report dated January 26, 2011. (Pl. Br., Ex. 2.) This report was never provided to Nython Carter, Ms. Kaur, an administrator, or anyone employed by the Willingboro

Board of Education.[3]

Towards the end of Tasia's 9th grade year, the Individualized Education Program (IEP) team determined that, for Tasia's 10th grade year, she would be taken out of the Workforce Readiness Program and placed in a learning disability resource classroom. (Mole Dep. 37:7-25.) During Tasia's tenth grade year, the 2009-2010 academic year, Tasia was not involved in any sexual incidents at the school. (Tasia Dep. 77:8-11.) Towards the end of Tasia's 10th grade year, the IEP team determined that Tasia would remain in the learning disability resource classroom for her 11th grade year, the 2010-2011 academic year. (Def. Br., Ex. J.)

Approximately three months prior to the April 12, 2011 incident, Chris Gaines (Gaines) brushed up against and/or rubbed Tasia's buttocks in school, which became more frequent a few weeks after it began. (Tasia Dep. 116:2-23, 117:8-118:1.) In fact, in one particular incident, a teacher, "Mr. Armoro", observed this behavior and instructed Gaines to stop. (Id. at 118:16-119:11.) Thereafter, Gaines did not touch Tasia's buttocks in front of that

---

[3] Dr. Nitti's January 26, 2011 report concluded that "[t]here is a great likelihood of future abuse against this young woman." (Pl. Br., Ex. 2.) In its opinion on the Motion to Dismiss/Motion to Amend Complaint, the Court stated that "[t]he present pleadings suggest that the Board disregarded Dr. Nitti's explicit warning and took no measures to protect Tasia." See Lockhart, supra, at 736. Since then, Plaintiffs have conceded that Dr. Nitti's report was never provided to "Nython Carter, Ms. Kaur, an administrator or anyone employed by the Willingboro Board of Education prior to the alleged April 12, 2011 incident." (Def. Br., Ex. R.)

teacher. (Id.) On another occasion, another teacher, referred to as "Coach," required that Gaines sit by him during class and spoke with Gaines about his inappropriate behavior. (Id. at 119:12-120:11.) Thereafter, Gaines no longer touched Tasia in front of that teacher. (Id.) Prior to April 12, 2011, Tasia never complained to any teacher, assistant principal or principal about Gaines "smacking her buttocks" or touching her in any manner. (Id. at 123:7-11.)

On April 12, 2011, Gaines "smacked Tasia's buttocks" in the presence of Ms. Kaur, a substitute teacher that was covering Tasia's class on that date, while Ms. Kaur was speaking to another student. Ms. Kaur did not say anything to Tasia or Gaines about this. (Id. at 120:12-122:19.) During her lunch period, Tasia exited the cafeteria and walked unaccompanied to an unoccupied and unlocked classroom in order to retrieve money from her purse. (Id. at 106:23-108:4.) She did not pass any school personnel during this time. (Id. at 114:10-13.) Moments later, Gaines entered the classroom. (Id. at 114:4.) Gaines obtained something from his desk, approached Tasia at her desk, and they discussed the cafeteria food. (Id. at 114:14-115:15.) Then, Gaines stood behind Tasia and began to rub her buttocks while she demanded that he stop. (Id. at 124:4-25, 125:23-25.) Despite her objection, Gaines began kissing Tasia's neck and grabbing her around her waist while she elbowed him and tried to push him away. (Id. at 125:5-18.)

Gaines, then, went behind Tasia and tried to pull her pants down while she repeatedly objected and tried to turn around. (Id. at 130:9-22, 132:12-133:2.) Nevertheless, Gaines then proceeded to penetrate Tasia's vagina. (Id. at 134:11-14, 135:3-4.) After about four to five minutes, Ms. Kaur returned to the classroom and turned on the lights at which point Gaines stopped his actions, and the two students pulled up their respective pants. (Id. at 136:3-17, 136:21-23, 137:14-18.) Gaines was in the classroom with Ms. Kaur for only a matter of seconds before Gaines exited. (Id. at 138:2.) Tasia approached Ms. Kaur and asked that she not get Gaines in trouble. (Id. at 138:12-14.)

Following the incident, Ms. Kaur made a report to either a security guard or to the main office. (Kaur Dep. at 19:8-20:4.) At some point thereafter, Tasia and Robbie Lockhart attended a meeting with an assistant principal where they discussed the April 12, 2011 incident involving Chris Gaines. (Tasia Dep. at 147:25-149:13; Robbie Dep. at 52:7-53:15.) Tasia believes that Chris Gaines was disciplined and expelled from the school because she never saw him in school after the April 12, 2011 incident. (Tasia Dep. 153:15-23.) On the same day of the incident, pursuant to a telephone conference with Robbie, in order to provide increased supervision, Tasia's IEP was revised to remove her from the learning disability classroom and to place her into a self-contained behavior disabilities setting with a behavioral

8

intervention plan for the remainder of the school year. (Def. Br., Ex.'s M and N.) For the remainder of her high school career, there were no additional incidents where Tasia was involved in any sexual touching. (Tasia Dep. 171:2-11.)

### B. Procedural History

On January 2, 2014, Plaintiffs commenced a civil action in the Superior Court of New Jersey against, the Willingboro Board of Education, Assistant Principal Nython Carter, a substitute teacher by the name of Ms. Kaur, and other parties based upon an alleged sexual assault that occurred on April 12, 2011, while Plaintiff Tasia Lockhart was a student at Willingboro High School. Thereafter, Defendants filed a Notice of Removal to the United States District Court, District of New Jersey. [Docket Item 1.] On June 30, 2014, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs filed an opposition to the motion on August 22, 2014, and Defendants filed a reply on September 8, 2014. [Docket Items 7-10.]

On September 26, 2014, Plaintiffs filed a Motion for Leave to file an Amended Complaint. [Docket Item 13.] Defendants filed a brief in opposition to this motion on October 26, 2014. [Docket Item 14.] On March 31, 2015, this Court issued an opinion and order, granting in part and denying in part Defendants' Motion to Dismiss, and granting Plaintiffs' Motion for Leave to file an Amended Complaint. See Lockhart v. Willingboro High Sch., 170 F.

Supp. 3d 722 (D.N.J. 2015). As a result, Plaintiffs' claims were reduced to negligence, including limited *per quod* damages by Robbie and James Lockhart, and Tasia Lockhart was permitted to pursue a Title IX claim against the Board. Id.

Defendants Willingboro Board of Education, Nython Carter, and Ms. Kaur filed the present Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c) on October 14, 2016. [Docket Item 39.] Plaintiffs opposed the Motion for Summary Judgment. However, they consented to the dismissal of their claims against Defendant Nython Carter. (Pl. Br. at 61.) Accordingly, the Court will dismiss the claims against Nython Carter with prejudice.

On November 10, 2016, Defendants filed a Motion to Strike Plaintiffs' Late Amendment to Discovery in response to an October 28, 2016 certification obtained from Dr. Victor Nitti by Plaintiffs.[4] [Docket Item 48-49.] Plaintiffs filed a cross motion, seeking permission to seeking permission to submit a supplemental report of Dr. Nitti as an alternative to Dr. Nitti's October 28, 2016 certification. [Docket Item 51.] On May 3, 2017, Magistrate Judge Ann Marie Donio issued an order, granting Defendants' motion to strike the certification of Plaintiffs' expert Dr. Nitti and denying Plaintiffs' cross-motion seeking permission to submit the

---

[4] After Defendants filed the present motion, Plaintiffs obtained a Certification from Dr. Nitti (Pl. Br., Ex. 13.) in which Dr. Nitti concluded that Tasia Lockhart suffered "a permanent injury substantially caused by the [April 11, 2015] occurrence.'

certification of Plaintiffs' expert Dr. Nitti or to serve a
supplemental expert report. [Docket Item 59.] Thus, the Court will
not consider Dr. Nitti's October 28, 2016 Certification in
reaching its decision on this Motion for Summary Judgment.

## III. DISCUSSION

### I. Summary Judgment Standard

At summary judgment, the moving party bears the initial
burden of demonstrating that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). Once a properly supported motion for
summary judgment is made, the burden shifts to the non-moving
party, who must set forth specific facts showing that there is a
genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 250 (1986). In reviewing a motion for summary judgment, the
court is required to examine the evidence in light most favorable
to the non-moving party, and resolve all reasonable inferences in
that party's favor. Hunt v. Cromartie, 526 U.S. 541, 552 (1999);
Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). Credibility
determinations are not appropriate for the court to make at the
summary judgment stage. Davis v. Portline Transportes Maritime
Internacional, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the
outcome of the suit under the governing law," and genuine when

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998)(quoting Anderson, 477 U.S. at 252).

## A. Plaintiff's Title IX Claim

Defendants first aver that the Court should grant their motion for summary Judgment with respect to Plaintiffs' Title IX claim because Plaintiffs have failed to establish the elements required for this cause of action. (Def. Br. at 15-20.) Title IX, 20 U.S.C. § 1681, et seq. broadly prohibits discrimination by a funding recipient on the basis of sex. The Supreme Court has recognized that Title IX liability may be imposed under certain circumstances where a school district is deliberately indifferent to student-on-student sexual harassment. See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 643(1999).

To prevail against the School District in their claim of student-on-student sexual harassment under Title IX, Plaintiff must show that (1) the School District received federal funds; (2) sexual harassment occurred; (3) the harassment occurred under "circumstances wherein the [School District] exercise[d]

substantial control over both the harasser and the context in
which the ... harassment occurred"; (4) the School District had
"actual knowledge" of the harassment; (5) the School District was
"deliberately indifferent" to the harassment; and (6) the
harassment was "so severe, pervasive, and objectively offensive
that it [could] be said to [have] deprive[d] the victims of access
to the educational opportunities or benefits provided by the
school." Brooks v. City of Phila., 747 F. Supp. 2d 477, 482 (E.D.
Pa. 2010)(citing Davis, supra.).

1. Sexual Harassment

Defendants contend that the March 20, 2009 incident should
not be considered sexual harassment for Title IX liability
because, Plaintiff admitted to school officials, a police officer,
Dr. Nitti and defense counsel that she willingly performed
fellatio on the young man involved in the March 2009 incident.
(Def. Br. at 16.) citing Meritor Sav. Bank, FSB v. Vinson, 477
U.S. 57, 68 (1986)(stating that "the gravamen of any sexual
harassment claim is that the alleged sexual advances were
'unwelcome'.").

In order to constitute actionable sexual harassment under
Title IX, the conduct at issue must first be unwelcome. United
States Dep't of Educ. Office of Civil Rights, Revised Sexual
Harassment Guidance: Harassment of Students by School Employees,
Other Students, or Third Parties (Oct. 2015),

https://www2.ed.gov/about/offices/list/ocr/docs/sexhar01.html.
(Harassment Guidance). "Acquiescence in the conduct or the failure
to complain does not always mean that the conduct was welcome."
Id. "Assessment of "welcomeness" depends upon the age of the
alleged victim and "younger children" may not have "the capacity
to welcome sexual conduct" under any circumstances." Id.; See also
Dawn L. v. Greater Johnstown Sch. Dist., 586 F. Supp. 2d 332, 367
(W.D. Pa. 2008)(finding that an eleven year old student with
severe psychological problems lacked the capacity to welcome
sexual favors from an older student or consent to sexual
activities.) "If there is a dispute about whether harassment
occurred or whether it was welcome -- in a case in which it is
appropriate to consider whether the conduct could be welcome --
determinations should be made based on the totality of the
circumstances." Harassment Guidance,
https://www2.ed.gov/about/offices/list/ocr/docs/sexhar01.html.

Having considered the totality of the circumstances
surrounding the March 20, 2009 allegations of sexual assault,
there is a genuine dispute as to whether Plaintiff Tasia Lockhart
had the capacity to welcome or consent to the sexual request of
Midgette, an older male student. At the time of the alleged
assault, Tasia Lockhart was a 15-year-old student who suffered
from a developmental disability believed to be caused by Fetal
Alcohol Syndrome. (Pl. Br., Ex. 2 at 5.) Tasia also suffered from

various cognitive deficits and learning disabilities, including specific learning and communication impairments. (Id. at 7.) Further, Tasia's emotional functioning testing reflected scores in the clinically significant or maladaptive range including Depression, Anxiety, Attention Problems, Locus of Control and Atypicality. (Id.) Notably, during a November 2009 Psychological Evaluation, Tasia indicated that she "hear[s] voices in her head that no one else hears" and that "even when [she] is alone, [she] feels like someone is watching [her]." (See Pl. Br., Ex. 15.) Though Defendants urge the Court to focus on Tasia's "admission" that she consented/agreed to the sexual request of Shawn Midgette (Tasia Dep. 65:11-18.), a review of the aforementioned evidence severely undermines any assertion that Tasia had the capacity to consent to or welcome such requests.

For the foregoing reasons, the Court finds that the record contains sufficient evidence to allow a reasonable finder of fact to find that the March 20, 2009 incident was unwelcomed and hence constituted sexual harassment. Accordingly, Defendants' argument that the harassment was not so severe, pervasive, and objectively offensive that it could be said to have deprived Tasia Lockhart of access to the educational opportunities or benefits provided by the school because there was a single incident of sexual harassment (the April 2011 incident) is also rejected.[5] (Def. Br.

_____

[5] citing Dawn L. v. Greater Johnstown School Dist., 586 F.Supp.2d

at 19.)   Therefore, the Court will turn towards assessing
Defendants' response to the March 2009 incident of sexual
harassment and whether that was a causal factor in the 2011 sexual
assault.

2. Deliberate Indifference

Deliberate indifference to acts of peer sexual harassment
arises where the District's response or lack of response to the
harassment is clearly unreasonable in light of known
circumstances. Davis, 526 U.S. at 648. A Title IX plaintiff can
establish liability by "showing that a single school administrator
with authority to take corrective action responded to harassment
with deliberate indifference." Fitzgerald v. Barnstable Sch.
Comm., 555 U.S. 246(2009) (citing Gebser v. Lago Vista Indep. Sch.
Dist., 524 U.S. 274, 290(1998)). To establish deliberate
indifference, a plaintiff must show that the school "made an
official decision not to remedy" the sexual harassment. See
Gebser, 524 U.S. at 290. This showing, which is a burden placed on
the plaintiff, is purposely high "to eliminate any 'risk that [a
recipient of federal funds] would be liable in damages not for its
own official decision but instead for its employees' independent

---

332, 372 (W.D. Pa. 2008)(quoting Davis, 526 U.S. at 652-53
(holding that, "[a]lthough, in theory, a single incident of
sufficiently severe . . . harassment could . . . have such an
effect," it was "unlikely that Congress would have though such
behavior sufficient . . . in light of the inevitability if student
misconduct and the amount of litigation that would be invited . .
."")).

actions." <u>Davis</u>, 526 U.S. at 643.  The School District will be deemed deliberately indifferent to acts of student-on-student harassment only where its response to the harassment or lack thereof is "clearly unreasonable in light of the known circumstances." <u>Id</u>. at 648-649.

a. District's Response to March 2009 Incident

With respect to the March 20, 2009 incident, Defendants argue that the record reflects that the Board did not act with deliberate indifference. (Def. Br. at 16-18.) To support this argument, Defendants direct the Court's attention to the following documents: the March 31, 2009 email from Principal Lucas to Assistant Superintendent Manning (Def. Br., Ex. G.), the March 26, 2009 Willingboro Police Department Report by Patrolman Walter Harvey (Def. Br., Ex. E.), and the May 26, 2009 Memorandum of Investigation by Norman Perry (Def. Br., Ex. F.). Defendants argue that these documents prove that appropriate persons received actual knowledge of the incident on March 25, 2009, and an investigation ensued. (Def. Br. at 16.)  Defendants further argue that these documents show that all appropriate agencies and persons (DYFS, Prosecutor's Office, parents, etc.) were contacted and informed of the incident. (<u>Id.</u>)  Defendants aver that this record of the actions taken in response to the March 2009 incident prove that the Board did not act with deliberate indifference to any purported sexual harassment by Shawn Midgette against Tasia

Lockhart. (Id. at 16-17.) The Court, however, rejects this argument.

The Court finds that Defendants failed to produce any evidence to show that Defendants responded to the specific allegations that Shawn Midgette sexually assaulted Plaintiff Tasia Lockhart on March 20, 2009. Rather, Defendants merely produced evidence as to how they responded to what they believed, at the time, to be a consensual sexual encounter between two minor students and an alleged attempt to conceal such by their staff. The Court acknowledges that, during the weeks following the March 20, 2009 incident, Defendants had sufficient reason to respond to the incident in the manner in which they did. After all, Plaintiff Tasia Lockhart initially suggested that the incident was consensual. However, on April 17, 2009, a notice of claim pursuant to the New Jersey Tort Claims Act was served upon Defendants, providing Defendants notice that Plaintiffs were alleging that the March 20, 2009 incident was an act of sexual assault against Tasia Lockhart. The Court finds that Defendants failed to produce any evidence as to how they responded to the notice of allegations of sexual assault. In fact, the only evidence related to Defendants' response to the March 2009 incident that followed the April 17, 2009 notice was the May 26, 2009 Memorandum of Investigation by Norman Perry. Though the memorandum mentions the notice of claim pursuant to the New Jersey Tort Claims Act (Def. Br., Ex. F at

2.), the memorandum solely focuses on the investigation into whether there was a cover-up attempt.

After a thorough review of the evidence, it is uncertain how or if Defendants responded once they were made aware of the allegations of sexual assault. Though Defendants appear to have reached out to the police and DYFS concerning the seemingly consensual conduct (Def. Br., Ex. G), it is not clear that any meaningful steps were taken upon Defendants learning that Plaintiff was in fact alleging sexual assault. In fact, Thomas Mole, Tasia's caseworker, testified that he would have been contacted by DYFS had DYFS been enlisted. (Mole Dep. 67:17-25, 68:1-4.) He was never contacted. (Id.) Further, Tasia was never contacted by police regarding the March 2009 incident. (Tasia Dep. 72:6-7.)

Although critical details regarding how and if Defendants responded to the March 2009 allegations of sexual assault remain very much uncertain, what is certain is that, two years later, Tasia Lockhart was sexually assaulted a second time in another unlocked and unsupervised classroom in Defendants' school following a pattern of sexual misbehavior toward her by the perpetrator that was observed by school personnel. For these reasons, the Court finds that there are genuine issues of materials facts surrounding Defendants' response upon learning of allegations of sexual assault in 2009 and protecting Plaintiff

thereafter. Thus, the Court will deny Defendants' motion for summary judgment against Plaintiffs' Title IX claim.[6]

**B. Plaintiffs' New Jersey Tort Claims Act Claim**

Defendants aver that Plaintiffs' state law negligence claims alleged in the First, Third and Fourth Counts of the complaint must be dismissed with prejudice because Plaintiffs cannot meet the verbal threshold of the New Jersey Tort Claims Act (the Act) set forth at N.J.S.A. 59:92(d), which provides that:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

Additionally, where a public entity is immune from liability, the public employees of the public entity are equally entitled to such immunities. See N.J.S.A. 59:3-1. Thus, in order for Plaintiffs to hold a public entity, such as the Willingboro Board

_____

[6] It appears that, prior to the April 2011 incident, Robbie Lockhart contacted Mr. Mole on numerous occasions to complain about Tasia roaming the halls and the lack of supervision provided in the learning disability resource setting. (Robbie Dep. at 33:20-25, 43:1-17.) However, it is not clear if that information was every relayed to an Assistant Principal, Principal or any other "appropriate person."

of Education, or its employees, such as Ms. Kaur, liable for personal injuries, Plaintiffs must produce evidence showing that (1) Plaintiff Tasia Lockhart sustained a permanent loss of bodily function, permanent disfigurement or dismemberment and (2) that Plaintiff Tasia Lockhart incurred medical expenses that exceed $3,600.

In contending that that they meet the verbal threshold of the Act, Plaintiffs offer extensive arguments as to the first prong of the two-prong test. (Pl. Br. at 21-40.) However, even if the Court were to accept Plaintiffs' arguments with respect to the first prong of the two-prong test, the Court finds that Plaintiffs failed to produce any evidence to show that Tasia's medical expenses exceeded $3,600. In fact, Plaintiffs have not produced any evidence of any sum of money expended on Tasia's medical treatment. Rather, Plaintiffs urge the Court to disregard the monetary requirement of the Act, arguing that "[i]rrespective of the type or number of treatments, our courts have articulated that the sexual abuse of a child equates with serious physical and mental injury for which damages are recoverable under [the Act]." (Pl. Br. at 40.) The Court rejects this argument.

In making this argument, Plaintiffs relied on Collins v. Union County Jail, 150 N.J. 407, 420 (1997). In Collins, the New Jersey Supreme Court established precedent by interpreting the Act's verbal threshold criteria to include "psychological harm in

the form of post-traumatic stress disorder resulting from the rape by the corrections officer" as a permanent loss of a bodily function. Id.

Plaintiffs, however, failed to cite to any case that interpreted Collins as eliminating the monetary requirement of the Act. Also, the Court is not aware of such. In fact, this District has unambiguously interpreted Collins in a manner that maintains the verbal threshold criteria of the Act as a conjunctive two-prong test. See Rodwell v. City of Newark, Civil Action No. 11-3522 (JLL), 2013 U.S. Dist. LEXIS 141016 (D.N.J. 2013).

In Rodwell, the plaintiff brought claims under the New Jersey Tort Claims Act against the City of Newark after allegedly being physically and verbally abused by the city's police during an arrest. Id. at 2-3. The City argued that the plaintiff could not meet the verbal threshold of the Act. Id. at 20. In its analysis the Court acknowledged that the plaintiff met the first prong of the two-prong test by producing "sufficient evidence which may have lead a reasonable jury to find that [p]laintiff [had] sustained permanent injuries." Id. at 21; citing Collins, supra, at 420. In fact, a doctor diagnosed the plaintiff with post-traumatic stress and concluded that she suffered from "permanent depression and fear" as a result of the incident with the police. Id. Nevertheless, the court granted summary judgment as to the plaintiff's state law claims under the Act. Id. Notably, the court

stated that, "[a]lthough [p]laintiff's psychological injuries [were] sufficient to meet the threshold requirement of [the Act], [p]laintiff [had] failed to set forth any evidence showing that her medical expenses exceed[ed] $3,600." Id. at 22.

This Court is guided by the Rodwell court's interpretation of Collins and the verbal threshold criteria of the Act. Due to Plaintiffs' failure to produce any evidence to show that Tasia's medical expenses exceeded $3,600, the Court must grant summary judgment as to Plaintiffs' claims under New Jersey law.

**C. *Per Quod* Claims of Plaintiffs Robbie and James Lockhart**

The Court previously concluded that plaintiffs Robbie and James Lockhart were permitted to seek *per quod* damages, except that damages would be limited to loss of services, earnings, and medical expenditures. Lockhart, supra, at 738. See also McDonald v. Lederle Laboratories, 366 N.J. Super. 555 (N.J. Super. Ct. App. Div. 2004) ("[W]e decline to extend [plaintiff's] common law per quod damages "beyond those for loss of services, earnings, and medical expenditures"); Tynan v. Curzi, 332 N.J. Super. 267 (N.J. Super. Ct. App. Div. 2000) (refusing to allow parents recovery for loss of companionship and society in negligence actions).

A *per quod* claim is a derivative cause of action whose viability depends on the existence of tortious conduct against the injured spouse. See Tichenor v. Santillo, 218 N.J. Super. 165 (N.J. Super. Ct. App. Div. 1987). Because Plaintiffs' underlying

23

common law tort claims (Counts One and Three) have failed, Plaintiffs Robbie and James Lockhart's *per quod* claims for damages must also fail. <u>See</u> <u>Reilly v. Prudential Prop. & Cas. Ins. Co.</u>, 653 F. Supp. 725, 735 (D.N.J. 1987)(because plaintiff's "tort claims [were] dismissed, there [was] no underlying tort on which the [*per quod*] loss of consortium claim can rest.); <u>Hauck v. Danclar</u>, 262 N.J. Super. 225, 228 (Law Div. 1993)(noting that although a [*per quod*] loss of consortium is an independent claim with respect to damages, "a husband's (or wife's) consortium claim is derivative and dependent upon the other spouse prevailing in his/her suit for personal injuries . . . .").

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment against the *per quod* claims of Plaintiffs Robbie and James Lockhart.

### D. CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment will be granted in part and denied in part. With respect to Plaintiffs' state law claims under the New Jersey Tort Claims Act (Counts One and Four) and Plaintiffs Robbie and James Lockhart's derivative claim for *per quod* damages (Count Three), summary judgment will be granted. However, with respect to Plaintiff Tasia Lockhart's claim under Title IX against Defendant Willingboro Board of Education (Count Two) summary judgment is denied. Further, pursuant to Plaintiffs' consent, all claims

24

against Defendant Nython Carter shall be dismissed with prejudice. (Pl. Br. at 61.)  An appropriate order follows.


__September 29, 2017__
        Date

__s/ Jerome B. Simandle__
JEROME B. SIMANDLE
U.S. District Judge